[Civ. No. 22648. Fourth Dist., Div. One. June 17, 1980.]

MORELAND INVESTMENT COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO GAS & ELECTRIC COMPANY,
Real Party in Interest.

**COUNSEL**

Meserve, Mumper & Hughes, Hodge L. Dolle, Jr., and Judith P. Meyer for Petitioner.

No appearance for Respondent.

Gordon Pearce and L. Earl Ligon for Real Party in Interest.

**OPINION**

**COLOGNE, J.**—Eminent domain action brought by San Diego Gas & Electric Company (SDG&E) pursuant to its condemnation power (Pub. Util. Code, § 612) to condemn unimproved real property in San Diego County owned by Moreland Investment Company, a California corporation whose principal place of business is in Ventura County, and which does no business in San Diego County. Moreland moved to change the place of trial to Orange County pursuant to Code of Civil Procedure sections 394 and 397. Under section 394, Moreland contend-

ed SDG&E is a "local agency" within the meaning of the statute,[1] and since Moreland does not do business in this county, the statute compels transfer. Under section 397, Moreland contended the convenience of witnesses and promotion of the ends of justice were furthered by change of venue to Orange County because there is pending in that county another eminent domain action brought by Otay Municipal Water District to condemn additional portions of Moreland's San Diego County land. The trial court refused to transfer this action, and Moreland seeks a writ of mandate from this court to compel removal of the action to Orange County.

The order denying transfer was served on Moreland by mail on March 3, 1980. Its petition for mandate was filed in this court on April 10, 1980. Code of Civil Procedure section 400 requires a petition for mandate to review orders of the trial court granting or denying motions to change the place of trial must be filed within 10 days after service of written notice of the order. Allowing five days for the mail service (Code Civ. Proc., § 1013, subd. (a)), the petition was due in this court fifteen days after service of notice on March 3, i.e., on March 18, 1980. Its filing on April 10 was 23 days late.

Because the petition is late, we do not consider the venue motion under section 397, whose denial rests within the sound discretion of the trial court upon resolution of competing facts. (See discussion in 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 522, p. 1342.) We exercise our original jurisdiction to consider whether SDG&E is a "local agency" within section 394 of the Code of Civil Procedure, because the question is one of first impression having great importance, and the waste of the litigants' time in having to retry the case, in the event the trial court erred, would be costly not only to the litigants but to the portion of the public served by SDG&E whose rate payments indirectly

---

[1]Code of Civil Procedure section 394 provides in relevant part:"...Whenever an action or proceeding is brought by a...local agency within a certain county,...against a resident of another county,...or a corporation doing business in the latter, the action or proceeding must be, on motion of either party, transferred for trial to a county... other than that in which the plaintiff is situated, if the plaintiff is a...local agency, and other than that in which the defendant resides, or is doing business, or is situated....

"....................

"(3) For the purposes of this section, 'local agency' shall mean any governmental district, board, or agency, or any other local governmental body or corporation, but shall not include the State of California or any of its agencies, departments, commissions, or boards."

finance this litigation. (Cf., *Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 370 [217 P.2d 951]; *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].)

■ Moreland contends SDG&E is a local agency because it is defined as a public utility (Pub. Util. Code, § 216) and in this action it exercises the sovereign governmental power of eminent domain. Further, it serves 93 percent of the area of the county; 23 percent of its stockholders are local residents; and it employs 4,000 persons in this county. There is a high probability of its customers appearing on any jury selected from San Diego County. These factors combine to make likely the local bias in favor of SDG&E which the statute is designed to prevent by compelling removal to a neutral county.

SDG&E replies (1) it is a private corporation, not a governmental entity; (2) it is extensively regulated by the state and by the Public Utilities Commission, a statewide agency, hence subdivision (3) of section 394 specifically exempts it as a statewide agency from the transfer statute; and (3) Moreland has not overcome the strong presumption favoring trial of local actions where the land lies (Code Civ. Proc., § 392, governing actions for recovery of real property, and § 1250.020, stating venue for eminent domain actions to be the county where the property to be taken is located). Also, SDG&E contends Orange County is not a neutral county because SDG&E serves part of that area.

The cases so far applying section 394 have involved agencies which were clearly governmental in the sense their origins were political, in the provisions of statutes or the California Constitution. (See, e.g., *Garrett* v. *Superior Court* (1974) 11 Cal.3d 245 [113 Cal.Rptr. 152, 520 P.2d 968] [Riverside County Flood Control and Water Conservation District]; *Westinghouse Electric Corp.* v. *Superior Court* (1976) 17 Cal.3d 259 [131 Cal.Rptr. 231, 551 P.2d 847] [San Francisco Bay Area Rapid Transit District, "Bart"]; *H.K.H. Co.* v. *Superior Court* (1979) 95 Cal.App.3d 39 [156 Cal.Rptr. 827] [Calexico City Housing Authority]; *Marin Community College District* v. *Superior Court* (1977) 72 Cal.App.3d 719 [140 Cal.Rptr. 310] [Marin Community College District].) These cases discuss what makes an agency "local," but do not deal in depth with the question what is an "agency," or more precisely, a "governmental district, board, or agency, or any other local governmental body or corporation," within the meaning of Code of Civil Procedure section 394, subdivision (3), defining local agency. (See fn. 1,

*ante.*) The cases do establish the intent of the Legislature in enacting the statute was to guard against local prejudice and secure a trial on neutral ground. Being remedial, the statute is to be construed liberally to prevent trial in a county where the jurors may have more than an "academic interest" in the outcome. (*Westinghouse Electric Corp.* v. *Superior Court, supra,* 17 Cal.3d 259, 266, 267; *Garrett* v. *Superior Court, supra,* 11 Cal.3d 245.) The possibility of local bias arises when the challenged agency has the power to levy local taxes (*Westinghouse, supra; Garrett, supra; Marin Community College District, supra*), or when the governing board of the agency is appointed by or has close relationships with the local political governing body (*Garrett, supra,* and *H.K.H. Co., supra*). Here, SDG&E charges local rates and has hiring and firing power over 4,000 persons. However, SDG&E is a private shareholder corporation rather than a political entity or subdivision.

Although SDG&E's status as a shareholder corporation may be irrelevant to the factors which make bias and prejudice possible, nevertheless we cannot ignore the statutory language of subdivision (3) of Code of Civil Procedure section 394 which defines a local agency as a *governmental* district, board, or agency. Arguably, the Legislature has reserved the mandate of automatic transfer to a neutral county for actions involving political agencies, leaving the possibility of a traditional venue motion under section 397 for lawsuits involving locally based corporations with strong ties to the community.

Moreland argues when SDG&E exercises its power of eminent domain, it acts in a purely governmental, coercive fashion. It holds that power as a delegation from the Legislature, to be exercised in the public interest. For these reasons, the United States Supreme Court has intimated a utility's acts may well amount to "state action" in a condemnation proceeding. (See *Jackson* v. *Metropolitan Edison Co.* (1974) 419 U.S. 345, 353 [42 L.Ed.2d 477, 485, 95 S.Ct. 449, 454].) It therefore appears, Moreland argues, when SDG&E brings a lawsuit as an arm of the government, to condemn property in the public interest for public purposes, it should be subject to the rules and restrictions on such suits by government agencies generally, including the transfer rule of section 394. To hold otherwise would give an unwarranted advantage to the utility over other bodies with eminent domain power.

Although Moreland's arguments might be highly persuasive in the context of a traditional motion to change the place of trial for reasons

of convenience or fairness,[2] these arguments do not resolve the issue whether SDG&E is a "governmental" agency, as required by section 394. We find no warrant in the statutes to treat as "governmental" all corporations with extensive local ties. There are two striking differences between a regulated private utility such as SDG&E and any of the political entities held to be within section 394 in the cases we have cited. First, as we have already noted, those entities are publicly created and directly responsive to popular pressure, while SDG&E is owned by private shareholders and is accountable to a state regulatory commission, hence far less susceptible to local influence. Second, most of the agencies in the cases we have cited possessed powers of local taxation or other revenue-raising devices such that they were directly in a position to pass on their acquisition costs to the local taxpayers. In the case of SDG&E, however, it cannot directly pass on its eminent domain costs to the ratepayers. It is regulated by the Public Utilities Commission and must justify as reasonable any proposed rate increases. (Pub. Util. Code, §§ 451, 454.) The utility may not pass on the entire cost of acquired property to the ratepayers, but rather, is limited to a reasonable return on the property, less than a speculative profit but comparable to a fair return on investment property. (E.g., *App. of Gen. Tel. Co. of Cal.* (1969) 69 Cal.P.U.C. 601.) The shareholders are expected to bear some of the costs of acquisitions while ratepayers make a partial contribution. (E.g., *App. of San Jose City Lines, Inc.* (1954) 53 Cal.P.U.C. 624.)

Further, the statutes provide a procedure for the Public Utilities Commission to review the utility's proposed acquisitions as well as other changes in plant, fixtures and other property. (Pub. Util. Code, § 762.) Under these circumstances, there is no direct connection, nor is there a one-to-one correspondence between the size of the condemnation award in this proceeding and SDG&E's ultimate rate increases to the public, which will not even be computed until the new facilities are in operation.

We conclude SDG&E is not a governmental agency; hence, the local agency statute—Code of Civil Procedure section 394—has no applica-

---

[2]Code of Civil Procedure section 397 reads, in part: "The court may, on motion, change the place of trial in the following cases:

". . . . . . . . . . . . . . . .

"2.  When there is reason to believe that an impartial trial cannot be had therein.

"3.  When the convenience of witnesses and the ends of justice would be promoted by the change."

tion to this case. This conclusion makes it unnecessary to consider SDG&E's remaining arguments, that it is statewide rather than local and that Orange County is not a neutral county.

The petition for a peremptory writ of mandate is denied, and the order of the trial court refusing to transfer the matter shall stand.

Brown (Gerald), P. J., and Staniforth, J., concurred.