**UNITED STATES of America, ex rel., Anna PHILLIPS and Delores Perryman, Individually, and on behalf of the Estate of Hazel Hughes, deceased,**

v.

**PERMIAN RESIDENTIAL CARE CENTER.**

**No. MO–03–CV–134.**

United States District Court,
W.D. Texas,
Midland–Odessa Division.

Sept. 12, 2005.

Gerald K. Fugit, Attorney at Law, Odessa, TX, for Anna Phillips and Delores Perryman, Individually, and on behalf of the Estate of Hazel Hughes.

Fred Edward Davis, Davis & Davis, Austin, TX, for Permian Residential Care Center.

### ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JUNELL, District Judge.

BEFORE THE COURT are Defendant Permian Residential Care Center's Motion for Summary Judgment, filed July 27, 2005; Relators' Response in Opposition to Defendant's Motion for Summary Judgment, filed August 19, 2005, and Defendant's Reply to Relators' Response, filed August 29, 2005. After careful consideration of the Motion, Response, Reply and relevant law, the Court is of the opinion that the Defendant's Motion for Summary Judgment should be GRANTED IN PART.

### BACKGROUND

Relators Phillips and Perryman are the daughters of Hazel Hughes, deceased. Relators allege that on or about May 5, 2000, Hughes was admitted to Senior Living Properties, L.L.P. d/b/a Andrews Health Care Center. At that time, Andrews Health Care Center was a nursing home located in Andrews, Texas. It is undisputed that some time later, Senior Living Properties filed for bankruptcy under Chapter 11. However, the parties do not agree as to what became of Andrews Health Care Center as a result of the bankruptcy proceedings. According to Relators, Senior Living Properties sold its interest in the nursing home to Defendant Permian Residential Care Center, which is a nursing home operated within the premises of Permian Regional Medical Center, a hospital in Andrews, Texas. Defendant

maintains, however, that Permian Residential Care Center did not purchase Andrews Health Care Center nor assume its operations. Rather, it contends that Permian Residential Care Center was created by the Andrews County Hospital District and separately licensed by the State of Texas to begin operations on February 15, 2003.

Despite the debate over the formation of the Permian Residential Care Center, the parties agree that on or about March 6, 2003, Hughes was transported from Permian Residential Care Center to Permian Regional Medical Center. According to Relators, she was treated at that facility until March 19, 2003, for dehydration, malnutrition, and bed sores. After receiving treatment at Permian Regional Medical Center, Hughes returned to Permian Residential Care Center, where she remained until her death on May 11, 2003. Relators maintain that Hughes was not properly treated by Permian Residential Care Center and that in connection with the care provided to Hughes, false claims and fraudulent bills were submitted to Medicare/Medicaid for services rendered.[1]

Defendant filed a Motion to Dismiss Under Rule 9(b) on March 21, 2005. The Court held a hearing on June 16, 2005, where it denied the Motion to Dismiss and ordered Relators to comply with Rule 9(b). Relators filed an Amended Complaint on July 15, 2005, and Defendant filed an Amended Answer on July 22, 2005. Thereafter, on July 27, 2005, the Motion for Summary Judgment currently before the Court was filed.

## STANDARD OF REVIEW

Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir.1996). Further, the moving party has the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir.1995). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir.1993). "If the moving party fails to meet this burden, the motion must be denied, regardless of the nonmovant's response." *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

If the movant carries this burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing a properly supported motion for

---

1. There is a dispute between the parties regarding whether bills were submitted to Medicare or Medicaid. In their Amended Complaint, Relators maintain bills were submitted to both programs. The Court finds, however, in accordance with the "Discussion" section below, that the program to which bills were submitted is immaterial.

summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. FED. R. CIV. P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 n. 4 (5th Cir.1993); *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Krim,* 989 F.2d at 1442 n. 4. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Factual disputes that are unnecessary or irrelevant will not be counted. *Id.* In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *Id.* at 254, 106 S.Ct. 2505.

All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. If the record, so illuminated, could not lead a rational trier of fact to find for the nonmovant, summary judgment is proper. *Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993)(citing *Matsushita,* 475 U.S. at 577–78, 106 S.Ct. 1348). On the other hand, if the factfinder could reasonably find in the nonmovant's favor, summary judgment should be denied. *Id.* (citing *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505). Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that it would be prudent to proceed to trial. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## DISCUSSION

In their Amended Complaint, Relators allege Defendant violated the False Claims Act and engaged in Common Law Fraud.

### I. False Claims Act

The False Claims Act provides for restitution to the Government for money taken by fraudulent means. *United States v. Hess,* 317 U.S. 537, 551, 63 S.Ct. 379, 87 L.Ed. 443 (1943). Liability under the False Claims Act occurs when a person or entity " . . . (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or] (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(irrelevant sections omitted). For purposes of the False Claims Act, "knowing" and "knowingly" mean that a person, with respect to information: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b). The False Claims Act does not, however, define "false or fraudulent."

A "claim" in the False Claims Act context consists of a request or demand on the Government for money that induces the Government to disburse funds or "otherwise suffer immediate financial detriment." *United States v. McNinch,* 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). Unless this element is present, actions do not constitute a cognizable false claims cause of action even if they involve "false" statements or unlawful conduct.

*Costner v. URS Consultants, Inc.,* 153 F.3d 667, 677 (8th Cir.1998).

## A. Cognizable "Claim" Under the False Claims Act

Defendant argues Relators fail to allege a cognizable cause of action under the False Claims Act. Specifically, Defendant contends that even after being ordered to do so, Relators have not complied with the particularity requirements of Fed. R. Civ. Pro. 9(b). The Court agrees that the Relators' Complaint contains general and conclusory allegations that Defendant submitted false claims to Medicare/Medicaid, but it fails to provide the requisite particulars.

 The complaint in a False Claims Act suit must fulfill the requirements of Rule 9(b). *See United States ex rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir.1999)(citing *United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997)). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of a mind of a person may be averred generally." FED. R. CIV. PROC. 9(b). To plead fraud with particularity a plaintiff must include the " 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.' " *Russell,* 193 F.3d at 308; *see also United States ex rel. Doe v. Dow Chemical Co.,* 343 F.3d 325, 329 (5th Cir.2003). At a minimum, Rule 9(b) requires that a relator "set forth the 'who, what, when, where, and how' of the alleged fraud." *Thompson,* 125 F.3d at 903. Even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief. *Id.*

 In reviewing the record, Relators have provided no factual basis for their belief that Defendant submitted claims for medically unnecessary services other than the conclusory statement that the services were performed only to obtain money from healthcare financial institutions. Further, Relators have not identified: 1) any specific individual who knowingly presented, or caused to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval; 2) any specific officer or employee of the of the United States Government who received a false or fraudulent claim for payment or approval from any individual associated with the Defendant; 3) any specific false or fraudulent information contained in any alleged claim for payment or approval; 4) the amount of the claim for payment or approval that was allegedly false or fraudulent; 5) any specific individual who knowingly made, used, or caused to be used any false record or statement in order to have same paid or approved by the Government; and 6) when any actual improper claims were submitted to the Government. Thus, Relators' allegations amount to nothing more than mere speculation and thus fail to present a cognizable claim under the False Claims Act.

## B. Quality of Care Claim

Relators also argue that Defendant defrauded the Government and Relators by providing substandard care and submitting false claims as a result of that care.

The False Claims Act was not designed for use as a blunt instrument to enforce compliance with all medical regulations—but rather only those regulations that are a precondition to payment—and to construe the impliedly false certification theory in an expansive fashion would improperly broaden the Act's reach. Moreover, a limited application of implied certification in the health care

field reconciles, on the one hand, the need to enforce the Medicare statute with, on the other hand, the active role actors outside the Federal Government play in assuring that appropriate standards of medical care are met. Interests of federalism counsel that the regulation of health and safety matters is primarily, and historically, a matter of local concern.

*United States ex. rel. Mikes v. Straus*, 274 F.3d 687, 699–700 (2nd Cir.2001). Furthermore, "permitting *qui tam* plaintiffs to assert that defendants' quality of care failed to meet medical standards would promote federalization of medical malpractice, as the Federal Government or the *qui tam* relator would replace the aggrieved patient as plaintiff." *Id.* at 700 (internal citations omitted). Beyond that, the Second Circuit observes "the courts are not the best forum to resolve medical issues concerning levels of care. State, local or private medical agencies, boards and societies are better suited to monitor quality of care issues." *Id.*

█ For those reasons, the Second Circuit thinks:

a medical provider should be found to have implicitly certified compliance with a particular rule as a condition of reimbursement in limited circumstances. Specifically, implied false certification is appropriately applied only when the underlying statute or regulation upon which the plaintiff relies *expressly* states the provider must comply in order to be paid.

*Id.* Liability under the Act may properly be found therefore when a defendant submits a claim for reimbursement while knowing, as that term is defined by the Act, that payment expressly is precluded because of some noncompliance by the defendant. *Id.* However, the Second Circuit held that if a treatment is so deficient as to

be worthless, then the defendant's claims would be false. *Id.* at 703.

In *United States v. NHC Healthcare Corp.*, 115 F.Supp.2d 1149 (W.D.Mo.2000), the Western District of Missouri held in order for the United States to prove it was fraudulently billed for the care given to two residents at issue in the lawsuit, it must demonstrate the patients were not provided the quality of care which promotes the maintenance and the enhancement of the quality of life. *Id.* at 1153. The court further found it would not find a cognizable claim under the False Claims Act if the United States simply disagreed with a reasonable medical care treatment administered by the Defendant. *Id.*

Both the *Straus* and *NHC* courts concluded the False Claims Act may properly be invoked if a defendant's services are so deficient as to be worthless. However, the courts also agreed the False Claims Act should not be used to call into question a health care provider's judgment regarding a specific course of treatment. Thus, these courts have limited the False Claims Act from becoming a federal malpractice statute. Robert Salcido, *The Government's Increasing use of False Claims Acts against the Health Care Industry*, 24 J. LEGAL MED. 457, 475 (2003).

█ Because the Fifth Circuit has not addressed this particular issue, this Court holds the False Claims Act should not be used to call into question a health care provider's judgment regarding a specific course of treatment. Relators specifically pled Defendant provided substandard care, which the Court construes as questioning a specific course of treatment. However, the record does not show the Defendant's services were so deficient as to be worthless. Thus, the Court finds Relators have not pled a cognizable claim under the False Claims Act regarding their quality of care claim.

Moreover, there is no evidence before this Court that shows that either the treatment of Hughes was substandard or that the treatment was performed by Defendant to make a fee and defraud the Government. The only evidence before the Court on behalf of Relators is an affidavit of a nurse, which is lacking in specificity as it fails to list any specific false claims falsely or fraudulently submitted to the Government. Therefore, the Court finds Relators have failed to demonstrate there is a genuine issue of material fact.

Finally, the Court recognizes that it is worth noting that the issues related to the care and treatment of Hughes have already been brought before a state court. The 109th Judicial District Court of Andrews County, Texas, dismissed Relators' claims against Defendant with prejudice on March 19, 2004.

Therefore, for all the aforementioned reasons, the Court finds that Defendant's Motion for Summary Judgment should be granted as to Relators' claim under the False Claims Act as there is no genuine issue of material fact.

## II. State Law Claim

■■■ Relators have also asserted a state common law fraud claim against Defendant. However, the Court has ruled in favor of the Defendant and dismissed the federal claim. When a federal law claim that serves as the basis for subject matter jurisdiction is dismissed and only a state law claim grounded on supplemental jurisdiction remains, a district court has broad discretion to dismiss the state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Guzzino v. Felterman*, 191 F.3d 588, 594–95 (5th Cir.1999); *Rhyne v. Henderson County*, 973 F.2d 386, 395 (5th Cir.1992). In making this decision, the Court should balance judicial economy,

convenience and fairness to the parties, as well as the principles of federalism and comity. *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. Here, these factors weigh in favor of dismissal of the Relators' common law fraud claim. Thus, the Court declines to exercise supplemental jurisdiction over the state law claim asserted against Defendant.

## CONCLUSION

Based on the aforementioned reasons, the Court finds Defendant is entitled to summary judgment on Relators' federal claim. As to Relators' state law claim, the Court declines to exercise supplemental jurisdiction over the claim. Accordingly,

It is hereby **ORDERED** that Defendant's Motion for Summary Judgment, filed July 27, 2005 (Doc. No. 38) is **GRANTED IN PART**, consistent with the above discussion.

It is **FURTHER ORDERED** that Relators' federal claim against Defendant is **DISMISSED WITH PREJUDICE.**

It is **FINALLY ORDERED** that Relators' state law claim against Defendant is **DISMISSED WITHOUT PREJUDICE.**