[No. B188345. Second Dist., Div. One. June 27, 2006.]

BOB PARRETT CONSTRUCTION, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
NORTHROP GRUMMAN SPACE AND MISSION SYSTEMS
CORPORATION, Real Party in Interest.

COUNSEL

Towle, Denison, Smith & Tavera, Michael C. Denison and Marta L. Higuera for Petitioners.

No appearance for Respondent.

Sheppard, Mullin, Richter & Hampton, Joseph F. Coyne, Jr., Gregory P. Barbee and Amir Shlesinger for Real Party in Interest.

## OPINION

**VOGEL, J.**—The employees of two corporations were charged and convicted of defrauding the United States government. The corporations, which were not charged with any crimes but were potentially liable for common law tort damages and civil fines, settled their claims (one for $1 million, the other for $200,000) and obtained releases from the United States. One corporation then sued the other for indemnity and damages, which resulted in the defendant corporation's motion for a determination that its $200,000 settlement was made in good faith and thus barred the other corporation's claims. (Code Civ. Proc., §§ 877, 877.6.) Without reaching its merits, the trial court denied the motion on the ground that the good faith statute does not apply in this context. We conclude otherwise and issue a writ of mandate directing the trial court to determine the merits of the motion.

## FACTS

### A.

The Department of Defense and other agencies of the United States contracted with TRW, Inc., which in turn contracted with Bob Parrett Construction, Inc. (BPC) to perform multipurpose commercial construction services ancillary to TRW's work for the United States.[1] At the times relevant to these proceedings, Bob E. Parrett and Jeffrey Bochesa each owned 50 percent of BPC.

From 1996 to 2000, Bochesa and Marco Urrea (a BPC employee) gave kickbacks disguised as inflated invoices to several TRW employees, who passed the inflated costs on to the United States. In 2000, the Federal Bureau of Investigation began an inquiry that ultimately resulted in the criminal prosecution of Bochesa, Urrea, and six TRW employees who accepted the kickbacks—but not TRW, BPC or Parrett, apparently because there was insufficient evidence to prosecute them. In 2003 or 2004, Bochesa, Urrea and the TRW employees pled guilty to the charged violations of the Anti-Kickback Act, 18 U.S.C. § 371.

In May 2004, TRW paid $1 million to the United States in settlement of any "claims against TRW . . . that the United States may have [had] arising out of the acts of employees of [BPC] and TRW . . . who have entered guilty pleas for violations of the Anti-Kickback Act." For its part, the United States released TRW "from any and all civil and administrative monetary claims the United States may have [had] under the False Claims Act, 31 U.S.C. §§ 3729–3733, under the Anti-Kickback Act, 41 U.S.C. §§ 51–58, under any other statute creating causes of action for damages or penalties for the submission of false claims or relating to kickbacks, under any remedies otherwise available to the United States pursuant to the terms of any contracts between the parties, or under common law for fraud, payment by mistake, unjust enrichment, or breach of contract . . . ."

At about the same time, BPC paid $200,000 to the United States in settlement of the civil claims against BPC, Parrett, and Bochesa, and received from the United States a release from "any civil monetary claim it may have under the False Claims Act, 31 U.S.C. § 3729 and common law claims for unjust enrichment concerning the allegations contained" in the United States' criminal action against Bochesa.

---

[1] The plaintiff in this action, Northrop Grumman Corporation, is the parent of Northrop Grumman Space and Mission Systems Corporation (NGSMS), an entity created by the merger of TRW and a Northrop Grumman subsidiary. Our references to TRW include Northrop Grumman, NGSMS, and its other affiliates.

### B.

In August 2004, TRW sued BPC, Parrett, Bochesa, Urrea, and the TRW employees for $1 million in tort and breach of contract damages arising out of the kickback scheme, and for indemnity and contribution for the same $1 million (the sum paid by TRW to the United States). In response, BPC and Parrett (who is included in our subsequent references to BPC) moved for a determination that their $200,000 settlement with the United States was made in good faith and that they were entitled to the benefits of sections 877 and 877.6 of the Code of Civil Procedure.[2] TRW opposed the motion, contending that sections 877 and 877.6 do not apply to the settlement of a criminal investigation (and, alternatively, that BPC had not established that its settlement was in good faith).

The trial court did not rule on the issues raised by TRW; instead, it denied the motion on the ground that section 877.6 does not apply because the plaintiff in this action (TRW) was not a party to the settlement agreement between the defendants (BPC and Parrett) and a nonparty (the United States). BPC then filed the petition for a writ of mandate now before us, asking us to compel the trial court to grant its motion. We issued an order to show cause, stayed proceedings in the trial court, and set the matter for hearing.

### DISCUSSION

### I.

TRW challenges the petition on procedural grounds, contending it was untimely filed and thus "jurisdictionally barred." We disagree.

Subdivision (e) of section 877.6 provides that, "[w]hen a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination . . . ." (Italics added.) The trial court's order was filed on December 14, 2005, and notice of the determination was mailed the same day. The petition was filed 21 days later, on January 10, 2006.

Although we agree with TRW that, "when a determination of good faith or lack of good faith of a settlement is made" by the trial court, the 20-day limit

---

[2] Undesignated section references are to the Code of Civil Procedure. Bochesa joined in the motion below, and has filed a request to join in the petition that is the subject of this opinion. His request is denied because the result we reach with regard to BPC and Parrett does not necessarily determine Bochesa's rights—because he stands convicted of a crime for the underlying acts.

is mandatory and jurisdictional (*Maryland Casualty Co. v. Andreini & Co.* (2000) 81 Cal.App.4th 1413, 1420 [97 Cal.Rptr.2d 752]; *Housing Group v. Superior Court* (1994) 24 Cal.App.4th 549, 552 [29 Cal.Rptr.2d 460]; and see *People v. Superior Court (Brent)* (1992) 2 Cal.App.4th 675, 683 [3 Cal.Rptr.2d 375]; cf. *Bensimon v. Superior Court* (2003) 113 Cal.App.4th 1257, 1258–1259 [7 Cal.Rptr.3d 151]), we do not agree that the rule applies here—because the trial court found that section 877.6 does not apply to this case and thus did not make a "determination of good faith or lack of good faith." Absent an applicable statute, we have discretion to hear a writ petition filed beyond the judicially imposed 60-day limit (*People v. Superior Court (Brent), supra,* 2 Cal.App.4th at p. 682; cf. *Moreland Investment Co. v. Superior Court* (1980) 106 Cal.App.3d 1017, 1019–1020 [165 Cal.Rptr. 427])—and we view this as an appropriate case for an exercise of that discretion in favor of a review of the merits.[3]

## II.

The first substantive question is whether the trial court correctly concluded that section 877.6 does not apply because TRW (the plaintiff in this action) was not a party to BPC's settlement with the United States. The trial court was mistaken.

### A.

As relevant, section 877.6 provides: "(a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors . . . . [¶] . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."

### B.

The case relied on by the trial court, *Arizona Pipeline Co. v. Superior Court* (1994) 22 Cal.App.4th 33 [27 Cal.Rptr.2d 118], is inapposite.

In *Arizona Pipeline,* a Southern Pacific train derailed, spilling tons of toxic waste. Southern Pacific hired various entities to clean up the spillage, as did

---

[3] Our strict reading of section 877.6 is justified by the fact that a failure to file a timely petition challenging a good faith determination *may* preclude review on appeal. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2005) ¶ 15:119.1, p. 15-54.)

Calnev Pipe Line Company, the owner of an underground pipeline that ran along Southern Pacific's right of way. Two weeks after the derailment, the pipeline exploded. (*Arizona Pipeline Co. v. Superior Court, supra,* 22 Cal.App.4th at pp. 36–37.) Several hundred lawsuits and dozens of cross-complaints for contribution and indemnity were filed but Calnev did not cross-complain against Arizona Pipeline (one of its subcontractors), and Arizona Pipeline did not cross-complain against Calnev. (*Id.* at pp. 37–38.) After all the parties except Arizona Pipeline settled their claims against each other, Calnev's insurer (Somerset Marine) filed a new action against Arizona and its insurer for equitable indemnity and contribution, and Arizona then cross-complained against all the alleged tortfeasors, including Southern Pacific and the others involved in the cleanup. (*Id.* at p. 38.)

In Somerset Marine's action, Southern Pacific and the other tortfeasors filed motions for a determination that their settlements had been made in good faith. (*Arizona Pipeline Co. v. Superior Court, supra,* 22 Cal.App.4th at pp. 39–40.) Over Arizona Pipeline's opposition, the trial court found some of the settlements were made in good faith within the meaning of section 877.6, and (as to those moving parties) granted their motions. Arizona Pipeline sought writ review. (*Id.* at pp. 40–41.)

■ Division Two of the Fourth District held "that in an action where two or more persons are alleged to be joint tortfeasors, a judicial determination that a settlement between joint tortfeasors was made in good faith does not bar under section 877.6 any nonsettling joint tortfeasor from prosecuting any existing or future claims against any settling tortfeasor for comparative indemnity, because section 877.6 relates only to those settlement agreements 'entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors.' (§ 877.6, subd. (a).) In the context of tort litigation, the 'plaintiff or other claimant' refers to the injured party claimant, and does not include joint tortfeasors named as cross-complainants and cross-defendants in cross-complaints seeking contribution or indemnity and who also may be, as here, a designated plaintiff or complainant in the same action which was initiated as a nontort action. *Where the only complainants are joint tortfeasors asserting various indemnity and contribution claims against one another, the statute does not apply.* To hold otherwise would be to rewrite the statute to apply to settlements entered into not only by the tort plaintiff or other claimant and one or more alleged joint tortfeasors, but also to *settlements entered into only among and between some joint tortfeasors.*" (*Arizona Pipeline Co. v. Superior Court, supra,* 22 Cal.App.4th at p. 42, italics added.)

## C.

■ The tortfeasors in *Arizona Pipeline* settled with each other and not with any of the plaintiffs in the underlying tort actions. In the case before us,

the underlying "tort actions" were the civil and administrative claims by the United States against TRW and BPC, which were settled. (See *Intrieri v. Superior Court* (2004) 117 Cal.App.4th 72, 85–86 [12 Cal.Rptr.3d 97] [fraud is a tort]; *Williams Electronics Games, Inc. v. Garrity* (7th Cir. 2004) 366 F.3d 569, 572, 576 [bribery is a tort].) BPC is not asking us to apply section 877.6 to a case where the *"settlements entered into [were] only among and between some joint tortfeasors"* as was the situation in *Arizona Pipeline* (*Arizona Pipeline Co. v. Superior Court, supra,* 22 Cal.App.4th at p. 42, italics added), but rather to a case in which the claimant (the United States) was injured by the acts of the parties to this action (TRW and BPC). Our acceptance of the trial court's interpretation would mean that every tortfeasor would have to seek indemnity and contribution in the action in which the tortfeasor settles with the plaintiff or claimant—and that is not the law. (*Nutrition Now, Inc. v. Superior Court* (2003) 105 Cal.App.4th 209, 212–213 [129 Cal.Rptr.2d 266].)

## III.

In a related argument, TRW contends the good faith settlement statutes do not in any event apply because section 877.6 applies only to "an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt"—and there never was an action in which the United States alleged that TRW and BPC were joint tortfeasors or co-obligors on a contract debt.[4] We disagree.

■ As we explained in *Nutrition Now, Inc. v. Superior Court, supra,* 105 Cal.App.4th at pages 212–213, "[a] good faith determination may be made in the tort action in which the settlement is reached (§ 877.6, subd. (a)) or in a subsequently filed indemnity action (*Regal Recovery Agency, Inc. v. Superior Court* (1989) 207 Cal.App.3d 693, 695 [255 Cal.Rptr. 34]), and there is nothing in the statutory scheme or its dual objectives—to encourage settlements and to permit the equitable allocation of costs among joint tortfeasors [citations]—to preclude consideration of an out-of-state settlement. [Citations.]" Quite plainly, equitable indemnity claims do not have to be pursued in an action in which the injured party names the tortfeasors as defendants.

In an attempt to put a finer point on it, TRW complains that at some time there had to be a single action in which the joint tortfeasors were sued by the injured party. We disagree. Because section 877.6 was adopted to encourage settlements and to permit the equitable allocation of damages, it applies when the fundamental requirements of the statute are met. As long as the settlement

---

[4] As noted above, subdivision (a)(1) of section 877.6 provides that "[a]ny party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors . . . ."

is reached before rather than after judgment (*Be v. Western Truck Exchange* (1997) 55 Cal.App.4th 1139, 1142–1146 [64 Cal.Rptr.2d 527]), it matters not whether the tortfeasors acted in concert to create a single injury, or successively to create distinct and divisible injuries (*Blecker v. Wolbart* (1985) 167 Cal.App.3d 1195, 1203 [213 Cal.Rptr. 781]), or whether the injured party filed a single action against the tortfeasors (*Mid-Century Ins. Exchange v. Daimler-Chrysler Corp.* (2001) 93 Cal.App.4th 310, 314–315 [112 Cal.Rptr.2d 880])—the settlor is entitled to have the trial court determine whether the settlement was made in good faith.

Although the United States may not have referred to TRW and BPC as joint tortfeasors, it is undisputed that TRW and BPC separately settled with the United States and obtained releases covering their civil liability arising from the United States' common law and statutory claims based on the kickback scheme conceived and carried out by the joint efforts of TRW's and BPC's employees.[5] What's in a name? In this case, nothing. BPC is entitled to have the trial court determine whether their settlement was made in good faith.[6]

## IV.

We summarily reject TRW's unsupported assertion that section 877.6 does not apply because BPC settled with the United States to avoid criminal prosecution. The record shows otherwise—the settlement resolved the United States' civil monetary claim under the False Claims Act and common law claims for unjust enrichment. Neither BPC nor Parrett was criminally prosecuted, and there is no authority for TRW's suggestion that section 877.6 does not apply when there are related criminal proceedings against other wrongdoers.[7]

---

[5] The False Claims Act is intended to make the government whole for money taken by fraud. (See 31 U.S.C. § 3729(a); *People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 553–554 [132 Cal.Rptr.2d 165]; *U.S. ex rel. Phillips v. Permian Residential Care* (W.D.Tex. 2005) 386 F.Supp.2d 879, 882–883.) The Anti-Kickback Act serves the same purpose with respect to bribery. (See 41 U.S.C. §§ 53, 55(a)(1); *U.S. v. Purdy* (2d Cir. 1998) 144 F.3d 241, 243–244; *United States v. Perry* (9th Cir. 1970) 431 F.2d 1020, 1024–1025, cited with approval in *Johnson v. S.E.C.* (1996) 318 U.S. App. D.C. 250 [87 F.3d 484, 488].) Both may give rise to joint and several liability. (See *U.S. v. O'Connell* (1st Cir. 1989) 890 F.2d 563, 565 [False Claims Act]; *Jensen v. United States* (9th Cir. 1964) 326 F.2d 891, 893 [Anti-Kickback Act].) Joint and several liability is a tort concept. (See *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1196–1198 [246 Cal.Rptr. 629, 753 P.2d 585].)

[6] We have not considered and do not address the parties' discussion about the substance of the good faith motion—an issue that was never reached by the trial court.

[7] The fact that TRW's complaint seeks damages as well as indemnity cannot circumvent application of the good faith statute. (*Cal-Jones Properties v. Evans Pacific Corp.* (1989) 216 Cal.App.3d 324 [264 Cal.Rptr. 737] [courts will not allow a joint tortfeasor to bring an affirmative claim for damages that is actually an artfully pleaded claim for indemnity, and will

## DISPOSITION

The petition is granted, and a writ shall issue commanding the trial court (1) to vacate its order denying BPC's motion for a determination that its settlement was made in good faith, (2) to hear the matter anew, and (3) to issue a ruling on the merits of the motion. The parties shall pay their own costs of these writ proceedings.

Spencer, P. J., and Mallano, J., concurred.

ferret out those claims that are in fact claims for indemnity]; *Norco Delivery Service, Inc. v. Owens-Corning Fiberglas, Inc.* (1998) 64 Cal.App.4th 955, 964 [75 Cal.Rptr.2d 456].)